UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DERIL DOWDY

                           Plaintiff,            12-CV-6343

                                                 **DECISION**
                    v.                           **and ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

                    Defendant.

---

## INTRODUCTION

Represented by counsel, Deril Dowdy ("Plaintiff" or "Dowdy"), brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance ("DIB") and Supplemental Security Income ("SSI") Benefits. The Court has jurisdiction over this action pursuant to 42 U.S.C. 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Therefore, this Court hereby grants the Commissioner's motion for judgment on the pleadings and denies Plaintiff's motion.

## PROCEDURAL HISTORY

On January 29, 2007, Dowdy filed an application for DIB and SSI benefits, claiming that he was disabled beginning on December 1, 2005, due to arthritis and gout. Administrative Transcript ("Tr.") at 220, 225. Dowdy's claim was denied on May 2, 2007. Tr. at 101-103. At his request, an administrative hearing was scheduled for February 4, 2009. Tr. at 134. Plaintiff appeared without representation before Administrative Law Judge ("ALJ") Theresa C. Timlin. Tr. at 37-67. On July 2, 2009, ALJ Timlin issued a decision, finding that Dowdy was not disabled during the alleged period of disability. Tr. at 112. On October 30, 2009, the Appeals Council reviewed the decision and remanded the case to an ALJ with instructions to further evaluate the severity and effects of Plaintiff's obesity and to obtain evidence from a vocational expert. Tr. at 114-118.

On May 18, 2010, Dowdy, represented by attorney Michael Ranieri, testified at an administrative hearing in Rochester, New York, before ALJ John P. Costello. Tr. at 68-100. Dowdy testified at the hearing, as did vocational expert Peter A. Manzi, Ed. D. ("Manzi" or "the VE").

On July 26, 2010, the ALJ issued a decision finding that Dowdy was not disabled during the period alleged. Tr. at 31. On April 25, 2012, the Appeals Council denied Plaintiff's request for

review, making ALJ Costello's decision the Commissioner's final decision. Tr. at 1-4. This action was filed on June 25, 2012.

## FACTUAL BACKGROUND

At the time of the hearing, Dowdy was a 45-year-old individual with an 11th grade education. His past relevant work was in shipping, receiving, factory production, and cleaning. Tr. at 226. Dowdy claims he became disabled on December 1, 2005, due to gouty arthritis, diabetes, and obesity, resulting in joint pain and stiffness that render him unable to work. Tr. at 57, 123-125. Dowdy was last insured on December 31, 2008. Tr. at 221.

Since October 2006, Plaintiff has been treated at Rochester General Hospital's Outpatient Clinic (the "outpatient clinic"). Additionally, according to Rochester General Hospital's records, he went to its Emergency Department five times in 2006 and four times in 2007 due to gout flare-ups. Tr. at 273.

On September 14, 2006, Plaintiff was seen at the Rochester General Hospital's Emergency Department (the "emergency room") complaining of pain and swelling due to a gout flare-up. Tr. at 287-290. He reported that he had been prescribed Indocin in the past for pain relief. Tr. at 290.

A month later, on October 16, 2006, Adviteeya Dixit, M.D. began treating Plaintiff Dowdy at the outpatient clinic. Tr. at 310. Dowdy reported that his pain had subsided since his last gout flare-up, and Dr. Dixit noted that the swelling had resolved.

Plaintiff reported that he had not been taking his prescribed medication Allopurinol since November 2005. Dr. Dixit noted that Plaintiff drank two beers per day and had used cocaine in December 2005.

That same month, Dowdy went to the emergency room reporting foot pain. Tr. at 288. The report of that visit indicates that Plaintiff had not been taking his daily medication. The attending physician opined that it was likely that gout was causing the tenderness, mild swelling, and unusual warmth in his right foot. In November 2006, Dowdy returned to the emergency room due to a gout flare-up that he claimed had moved from his left wrist to the elbow. Tr. at 286. Plaintiff stated that Indocin "always help[ed]" but complained that he ran "out" because "[the physicians] never [gave] [him] enough." He also reported increased alcohol intake and was advised to limit this behavior.

On November 3, 2006, Dowdy had x-rays taken due to complaints of pain in his left wrist, forearm, and elbow. Tr. at 291-292. X-rays of Plaintiff's left wrist revealed "no evidence of a fracture or dislocation." Tr. at 286, 291. X-rays of his left elbow showed "joint effusion...as well as infection [and] inflammation." Tr. at 292.

In December 2006, Plaintiff returned to Dr. Dixit for a follow-up at the outpatient clinic. Tr. at 312. Dowdy complained of pain in his left wrist and right knee due to gout. The pain in

his left knee was resolved, but he had run out of medication. He had no erythema or deformity in his joints, and he had full range of motion. Tr. at 313-314. Dr. Dixit recommended diet and exercise to control Plaintiff's glucose intolerance. Dowdy was prescribed Colchicine and Allopurinol and was advised to stop taking Indocin due to an absence of acute symptoms. Tr. at 315. He was also advised to quit smoking.

On February 19, 2007, Plaintiff went to the emergency room reporting pain in his right ankle as the result of a gout flare-up. Tr. at 392-417. The attending physician prescribed Vicodin for the pain and recommended he continue taking his prescribed gout medications.

On March 8, 2007, consultative physician Harbinder Toor, M.D., conducted an internal medicine examination. Tr. at 296-300. Dr. Toor noted Plaintiff's history of chronic pain in multiple joints due to a history of gouty arthritis. At the time, Dowdy was taking Hydrocodone, Allopurinol, Colchicine, and Indomethacin for treatment.

At the time of Dr. Toor's examination, Dowdy was 5'10" tall and weighed 222 pounds. Tr. at 296-297. Dr. Toor also noted that Dowdy occasionally smoked two packs of cigarettes a day, drank beer, enjoyed doing puzzles, and occasionally used marijuana and cocaine.

Dr. Toor found that, despite Plaintiff's reports of pain in his shoulders, elbows, ankles, he had normal and full movement in these joints. Tr. at 298. His joints were stable, and there was "no redness, heat, swelling, or effusion." Id. Dowdy told Dr. Toor that he could cook, clean, do laundry, shower and dress himself. Tr. at 296-297.

In a medical source statement, Dr. Toor opined that the gout and resulting pain caused "mild limitation for pushing, pulling, lifting, standing, walking, bending, or twisting of the [spine]" as well as "mild limitation for doing fine motor activities like tying shoelaces, zipping a zipper, buttoning a button, picking up coins, grasping, or gripping with both hands because of gouty arthritis." Tr. at 299. Dr. Toor also found that Plaintiff's prognosis was fair.

Plaintiff returned to the outpatient clinic on April 23, 2007. Tr. at 316. He had not stopped taking Indocin even though Dr. Dixit had recommended he discontinue it in December 2006. Tr. at 317. He therefore was advised to start taking Allopurinol and to stop taking Indocen after one week. In May 2007, Dowdy went to the outpatient clinic for a physical and reported that he was not following the recommended diet. Tr. at 322-323. He consumed red meat and red wine, drank two beers per day, and smoked 3-4 cigarettes per day. Marina Ostroukhova, M.D., opined that Plaintiff's gout was not controlled, and she increased his

Allopurinol dosage and advised that he follow a healthier diet. Tr. at 325.

On May 2, 2007, non-examining Disability Analyst A. Lasky ("Lasky") evaluated the examining sources' reports in the record to assess Plaintiff's physical Residual Functional Capacity. Lasky opined that Dowdy's "allegations of functional limitations [were] determined to be partially credible," and he is capable of performing work. Tr. at 301-306.

On July 2, 2007, Plaintiff went to the emergency room reporting pain in his left wrist as the result of a gout flare-up. Tr. at 418-437. The attending physician applied a splint and prescribed Indocin and Vicodin for the pain and swelling.

On July 23, 2007, Dr. Dixit noted that Dowdy's pain was "totally resolved" and he was taking Allopurinol and Colchicine. Tr. at 326. Plaintiff returned to the outpatient clinic in October 2007, and requested that a statement for his Social Security disability claim be completed. Tr. at 329. Dowdy was not taking the Allopurinol and Colchicine he had been advised to take to prevent gout flare-ups. Id.

On August 16, 2007, Plaintiff went to the emergency room reporting pain in his hand due to chronic gouty arthritis. Tr. at 438-459. Dr. Talwar prescribed Colchicine and Vicodin. Dowdy returned to the emergency room on November 4, 2007, complaining of

pain his right knee, and the attending physician prescribed Indocin.

On March 24, 2008, Plaintiff returned to the outpatient clinic complaining of a flare-up that had occurred two weeks prior. Tr. at 332-337. Devina Talwar, M.D. opined that his recurrent gout was "likely due to non-compliance and ethanol" consumption.

On May 15, 2008, Dowdy again returned to the outpatient clinic complaining that his hands and right foot were a little sore and swollen. Tr. at 334-335. His gout had improved with his current medications. Against Dr. Ostroukhova's recommendation, Dowdy continued his habit of drinking alcohol. Dr. Ostroukhova also refused to prescribe the Indocin he requested because, although the Indocin worked well in the event of an acute flare-up, Dowdy should not need it if he took his prescribed medications regularly. Despite this counseling, on May 28, 2008, Dowdy returned to the emergency room complaining of knee pain and claiming that he had run out of Indocin. Tr. at 381-380. Upon discharge, the attending physician dispensed Indocin and crutches for Plaintiff's knee effusion. In June 2008, Dowdy's attending physician at the outpatient clinic again counseled him about the negative effects of his alcohol consumption and medication non-compliance.

At the outpatient clinic on June 5, 2008, Dowdy reported four to five episodes of gout in the prior two months. Tr. at 336. He claimed he was taking his medications but admitted to occasionally

drinking alcohol. His knee, ankle, elbow, and hand joints appeared normal. On August 28, 2008, the outpatient clinic physician's notes revealed he was being treated for acute gouty arthritis with Indomethacin, Allopurinol, and Colchicine. Dr. Dixit again counseled him to stop smoking. Tr. at 341.

At a follow-up visit to the outpatient clinic on January 15, 2009, Plaintiff complained that his gout was beginning to act up again. Tr. at 344. Dr. Dixit observed mild tenderness in the left foot but no warmth or redness. Plaintiff had not been complying with the recommended medication because he was unsure of the status of his insurance. Two weeks later, Dowdy went to the emergency room complaining of pain in his left leg. Plaintiff claimed that he had a gout episode two days before and it was unlike any episode he had in the past. The attending physician noted that Dowdy used tobacco products and alcohol daily but had abstained for a week. He had also snorted cocaine two months earlier. Tr. at 366. He was prescribed Vicodin and discharged. Tr. at 364.

On January 4, 2010 Plaintiff returned to the emergency room reporting pain in his hand. The attending physician applied an arm sling and prescribed Norco to manage the pain. Tr. at 460. Dowdy returned to the emergency room on January 14, 2010 complaining of pain in his right knee. The attending physician prescribed Plaintiff additional Norco to manage the pain. Tr. at 448. In a Medical Source Statement dated November 24, 2010, Shurta Singhal,

M.D., opined that Plaintiff's prognosis was fair if Dowdy was compliant with his doctors' recommendations. Dr. Singhal opined that Dowdy's joint pain would cause him to be absent from work for about four days per month. Tr. at 485-487.

Dowdy was treated by Ya Li Chen, M.D., a rheumatologist, from April 1, 2010, through February 9, 2012. Tr. at 493-521. On April 1, 2010, Plaintiff presented to Dr. Chen with complaints of chronic joint pain. The record reveals that he weighed 198.3 pounds, 24 pounds less than what he weighed at Dr. Toor's examination in March 2007. Dr. Chen opined that Plaintiff had chronic gout with persistent joint symptoms in the knees, ankles, and feet. Dr. Chen prescribed Colchicine and increased his dosage of Allopurinol. He also counseled Plaintiff on "stop[ping] his regular beer consumption and [consumption of] other purine rich food." Tr. at 520-521.

On May 6, 2010, Plaintiff returned to Dr. Chen for a follow-up visit. Tr. at 517-518. Plaintiff had reduced his beer consumption from three cans per day to three cans per week. Tr. at 517. Dr. Chen noted that there was "some improvement" of the gout and recommended that Dowdy "continue to cut down beer [consumption]" and to comply with the prescribed medication. Tr. at 518.

At the hearing before ALJ Costello on May 18, 2010, Dowdy testified that he was supposed to avoid red meats and spicy foods to prevent flare-ups. Tr. at 81-84. He also stated that he had

been diagnosed with diabetes approximately a year before the hearing.  He testified that his doctor wanted him to maintain his weight around 200 pounds.  With regard to his activities, he stated he "trie[d] to play pool" once in a while, watched television, and performed light exercise.  Tr. at 86.  He was also able to use public transportation.  Tr. at 87.

After the hearing, despite "reduction in the swellings in the joints" (Tr. at 516), Dowdy consistently complained to Dr. Chen of joint pain and worsening gout at follow-up visits on June 4, 2010 (Tr. at 515-516); August 5, 2010 (Tr. at 513-514); October 19, 2010 (Tr. at 511-512); and December 10, 2010. (Tr. at 509-510).  Dowdy continued to smoke cigarettes and drink wine, but after the December 2010 holiday season, he gave up drinking beer.  Tr. at 492-507.  During the same time period, he increased his consumption of soda pop, which his physicians advised him to decrease.

His follow-up visits with Dr. Chen in 2011 were consistently marked by diet and medication non-compliance.  Tr. at 495-508.  At an appointment on April 8, 2011, Dowdy's weight was up to 232 pounds, 10 pounds heavier than his weight at Dr. Toor's examination in March 2007. 503-504.  On February 9, 2012, Plaintiff complained about increased bouts of flare-ups.  Tr. at 493-494.  He still smoked but had quit drinking beer. Tr. at 493.  Dr. Chen noted Dowdy's history of noncompliance by failing to take Allopurinol. Tr. at 494.

Plaintiff submitted a treatment document dated January 5, 2012 from Rochester General's Behavioral Health Network, an outpatient clinic for adults with mental and behavioral health issues.  Tr. at 523-525.  In the document, Randy Smart, M.S., diagnosed Plaintiff with depressive disorder.  Plaintiff's Global Assessment of Functioning ("GAF") score was 48.

## DISCUSSION

### I. Scope of Review

When reviewing an appeal of the Social Security Administration's denial of a claimant's application for benefits, Title 42 U.S.C., Section 405(g) directs the Court to accept the Commissioner's factual findings, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938).  The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim.  Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the content of the

pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See generally</u> <u>Bell Atlantic Corp. V. Twombly</u>, 550 U.S. 544, 555 (2007)("Factual allegations must be enough to raise a right to relief above the speculative level.").

## II. The Commissioner's Decision to Deny the Plaintiff benefits is Supported by Substantial Evidence in the Record

An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). In his decision denying benefits, the ALJ adhered to the five-step analysis required to evaluate disability claims.[1] Tr. at 24-31.

---

[1]

The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is performing substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers severe impairment(s), the ALJ considers whether the claimant has impairment(s) that lasted or expected to last for a continuous period of at least twelve months, and impairment(s) meets or medically equals a listed impairment in Appendix 1, Subpart P, Regulation No. 4; if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether impairment(s) prevents the claimant from doing past relevant work; (5) if the claimant's impairment(s) prevents him or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Under step 1 of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability. Tr. at 26. At steps 2 and 3, the ALJ concluded that Plaintiff had the following severe impairments: gouty arthritis; diabetes mellitus; and obesity. Id. The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in Appendix 1, Subpart P of the Social Security Administration's regulations. Tr. at 28.

At steps 4 and 5, the ALJ concluded that although Plaintiff was unable to perform his past relevant work, he retained the residual functional capacity ("RFC") to perform light work with certain restrictions. Tr. at 28-29. Considering his age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 30. The VE testified that if Dowdy could perform light work with the additional limitations, he could perform a light, unskilled job, such as a collator operator; however, if he were further limited and could only occasionally finger and handle items, there are sedentary positions he could perform. Tr. at 96.

Dowdy argues that the ALJ's decision finding that he is not disabled was against the weight of substantial evidence and erroneous as a matter of law. Specifically, Plaintiff maintains

that the ALJ failed to properly develop the record by not re-contacting Dr. Chen regarding Plaintiff's functional limitations; the ALJ's residual functional capacity finding was not supported by substantial evidence; the ALJ's assessment of Plaintiff's credibility was not supported by substantial evidence; and the Commissioner erred in basing his opinion on insufficient testimony from the Vocational Expert. See Plaintiff's Memorandum of Law ("Pl's Mem."), Points 1-4 (Dkt. No. 7).

## A.  Alleged Errors in the ALJ's Residual Functional Capacity Finding  (Plaintiff's Points 1 and 2)

In order to make a proper disability finding, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.4545(a)(3)-(4); see also SSR 96-8p, SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2, 1996). Here, the ALJ found that Plaintiff retained the RFC to perform light work[2] "with the following additional limitations: standing or walking a total of only four hours in an eight hour workday. He can sit up to six hours in an eight hour workday.  He can occasionally lift and carry up to

_____

[2]

The regulations define light work as a job "which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A job is also categorized as "light work" if it "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.

20 pounds.  He can occasionally stoop, crouch, or kneel." Tr. at
28.  The ALJ further noted that Dowdy "can frequently handle or
finger items."  Id.

The ALJ relied on evaluations from examining consultative
physician Dr. Toor, attending physicians at Rochester General
Hospital's emergency room, and treating physicians at Rochester
General Hospital's outpatient clinics (Drs. Dixit, Marchl,
Ostroukhova, Singhal, Talwar, and Chen), all of whom addressed the
Plaintiff's symptoms and functional limitations.  Tr. at 26-29.

The medical evidence in the complete record consistently
supported Dr. Singhal's opinion that Plaintiff's prognosis was fair
if he was compliant with the recommended diet and medication.  Tr.
at 485.  In March 2008, Dr. Talwar, one of the treating physicians
at the outpatient clinic, opined that Plaintiff's recurrent gout
was "likely due to non-compliance and ethanol" consumption.  Tr. at
333.  Documentation from Dowdy's visits to the emergency room
supports this opinion.  Tr. at 282-295, 363-456.

Dr. Toor, whose consultative examination the ALJ referred to
in his decision, observed that Dowdy had "pain in [his] ankles,
knees, hips, left wrist, left elbow, right wrist, right shoulder,
right elbow, and sometimes in the neck and back" due to history of
pain in multiple joints and gouty arthritis.  Tr. at 296.  He
opined that Plaintiff "had a mild limitation for pushing, pulling,
lifting, standing, walking, bending or twisting of the

thoracolumbar spine [and] mild limitation for fine motor activities like tying shoelaces, zipping a zipper, buttoning a button, picking up coins, grasping, or gripping with both hands." Tr. at 299.

The ALJ gave some weight to these strength limitations. Tr. at 28. See 20 C.F.R. §§ 404.1567(b), 416.967(b). He also considered treating physicians' findings that Dowdy had full range of motion and normal joints as well as Dowdy's testimony regarding his activities of daily living. Tr. at 28-29.

Plaintiff argues that there was insufficient evidence in the record for the ALJ to make a finding on Dowdy's RFC because "an important treating source," Dr. Chen, should have been re-contacted for an opinion on Dowdy's functional limitations. Plaintiff's Reply Memorandum ("Pl's Rep. Mem.") at 1-2 (Dkt. No. 12). Plaintiff argues that Dr. Chen noted significant crepitus (a grating sound) and tenderness in the knees; mild swelling and tenderness in the left ankle; and mild swelling, tenderness, and degenerative joint disease in the right knee. Tr. at 516. However, during the same visit, Dr. Chen also stated that Dowdy "ha[d] seen reduction in the swellings in the joints." Tr. at 515. Furthermore, he opined that Plaintiff's increased dose of Allopurinol would help improve his gout if he were to "continue to cut down beer [consumption], and [comply] with his medications." Tr. at 516. Dr. Chen's assessment of Plaintiff's physical limitations is consistent with other medical opinions in the

record, namely the mild impairment noted by the emergency room attending physicians on X-rays, and Plaintiff's failure to comply with diet and medication recommendations noted above. Tr. at 282-295, 363-456.

Where the record does not contain sufficient clinical findings, laboratory tests, or a diagnosis or prognosis necessary for a decision to be made, re-contacting a treating source for a function-by-function assessment may be warranted at the discretion of the ALJ. 20 C.F.R. §416.919a. See Hughes v. Apfel, 992 F.Supp. 243, 248 (W.D.N.Y.1997) (citing 20 C.F.R. §§ 404.1517 and 416.917). However, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim. see Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999); see also 20 C.F.R. §§ 404.1512(e), 404.1527(c), 416.912(e), 416.927(c).

I find that the record before the ALJ was sufficient to support a decision on the issue of disability and therefore re-contacting Plaintiff's treating sources was not required here. Moreover, after the hearing on May 18, 2010, the ALJ held the record open for Plaintiff's attorney to submit any outstanding medical records, but none were submitted. Tr. at 98. The ALJ issued his decision on July 26, 2010. Tr. at 31. Seven months after the ALJ issued the decision, on February 9, 2012, Plaintiff

submitted additional medical information to the Appeals Council. Tr. at 277. Dr. Chen's records relating to the alleged period of disability before the ALJ's decision was rendered do not suggest that the decision was unsupported by substantial evidence. Tr. at 282-295, 363-456.

Additionally, there are no grounds to remand this case because the regulations do not require the Appeals Council to contact a physician for medical source statements, and the medical reports that the ALJ evaluated were sufficiently complete. See 20 C.F.R. §§ 404.1513, 416.913.

The arguments set forth at points 1 and 2 of Plaintiff's memorandum of law in support of his motion are therefore rejected.


### D. The ALJ Properly Assessed Plaintiff's Credibility (Plaintiff's Point 3)

The ALJ found that Dowdy's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible insofar as they were inconsistent with the medical evidence of the record, specifically regarding his attacks of gouty arthritis. Tr. at 29. The ALJ "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment...[which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant." Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)

(citation omitted).  The ALJ thus is not obligated to accept a claimant's testimony about his limitations without question. Id.

Plaintiff contends that the ALJ's credibility finding was improper because the ALJ did not consider the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms, as required by 20 C.F.R. § 404.1529(c) and § 416.929(c).  Pl's Rep. Mem. at 3.  However, this Court finds that the ALJ's credibility assessment was sufficient and proper.

Here, the ALJ explicitly stated that he reviewed all of Plaintiff's subjective complaints.  Tr. at 28.  He properly considered Plaintiff's activities of daily living, testimony, and the evidence that Plaintiff consistently failed to comply with his recommended prescription medication dosages, failed to maintain a proper diet, and failed to abstain from tobacco, alcohol and controlled substances.  Tr. at 29.

In particular, hospital records from January 2010 show that Dowdy had mild arthritis in his right knee.  Tr. at 469-484.  At a follow-up appointment at the outpatient clinic on July 23, 2007, Dowdy's pain was "totally resolved," as he was taking his recommended medications, Allopurinol and Colchicine.  Tr. at 326. However, when he returned for his follow-up appointment at the outpatient clinic in October 2007, Dowdy reported that he was not taking the Allopurinol and Colchicine he had been advised to take to prevent gout flare-ups.  Tr. at 329.

Plaintiff testified that he was supposed to avoid red meats and spicy foods to prevent flare-ups. Tr. at 81. However, he consumed red meat and red wine, drank beer, and smoked cigarettes daily. Tr. at 322-323. He testified that his doctor wanted him to maintain his weight around 200 pounds. Tr. at 82. However, after the hearing, his follow-up visits with Dr. Chen in 2011 were consistently marked by diet and medication non-compliance. Tr. at 495-508. At an appointment on April 8, 2011, Dowdy's weight was up to 232 pounds. Tr. at 503-504.

The medical providers in the record all agreed that Dowdy's gout could be controlled if he took the proper preventative medications, such as Allopurinol and Colchicine, and if he quit smoking tobacco, taking drugs, drinking alcohol, and followed a certain diet. At almost every visit to the outpatient clinic or the emergency room, Dowdy was non-compliant in his treatment plan.


The Court notes that the ALJ did not discount Plaintiff's subjective complaints entirely. The ALJ determined that Plaintiff was only able to perform light work with certain limitations, such as he can only stand or walk a total of only four hours in an eight hour workday. Tr. at 28. This factored in some of Plaintiff's subjective complaints regarding his gouty arthritis symptoms. The ALJ only discounted the Plaintiff's complaints that are

inconsistent with the substantial medical evidence in the record and his treating physicians' opinions.

Accordingly, Plaintiff's argument that the ALJ failed to properly assess his subjective complaints is rejected.

### E. The Commissioner Did Not Err in Crediting on the Vocational Expert's Testimony (Plaintiff's Point 4)

Plaintiff argues that the hypothetical questions posed to the VE at the hearing were based upon an RFC capacity finding that did not accurately and completely describe Dowdy's limitations. Pl's Rep. Mem. at 4. Therefore, he argues that the VE's answers to these questions cannot provide substantial evidence to support the denial of benefits. Id. However, as discussed above, this Court finds the ALJ's RFC assessment to be proper. Therefore, there was sufficiently "substantial record evidence to support the assumption upon which the vocational expert based his opinion." Dumas, 712 F.2d at 1554.

### CONCLUSION

After review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of SSI and DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 11). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 6), and Plaintiff's

complaint (Dkt. No. 1) is dismissed with prejudice.  The Clerk of the Court is requested to close the case.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     July 10, 2013
           Rochester, New York